UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JASON WIDMER                                                       CIVIL ACTION

VERSUS                                                             NO. 21-381

WALTER T. SMITH, ET AL                                             SECTION: I (1)
**************************************************************************

**MEMORANDUM IN SUPPORT OF MOTION FOR COUNSEL TO
BE ENTITLED TO VERBAL VOIR DIRE FOR AT LEAST 45 MINUTES PER
ATTORNEY**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Jason Widmer, who respectfully move to extend the time for attorney-directed oral voir dire in this case to 45 minutes per party. Further, Counsel requests leave to submit a jury questionnaire to the venire in advance of formal voir dire.

Voir dire is needed in this case to ensure a fair jury, attorney conducted voir dire after judge voir dire is necessary for a fair jury to be empanelled.

**I.      QUESTIONS PRESENTED**

Will forty-five minutes of attorney-directed voir dire per party give them a chance to properly exercise their challenges for cause and peremptory strikes? The answer is yes. Voir Dire is critical to a fair and impartial jury according to ABA Jury Project Standards and the latest jury research.

**II.     VOIR DIRE IS CRITICAL TO A FAIR AND IMPARTIAL JURY**

Voir dire is the only time the Court and attorneys can speak directly to prospective jurors. Voir dire gives the Court and the parties the opportunity to discover conscious or subconscious preconceptions, biases, or other facts. The process is critical to the selection of a fair and impartial jury. Adequate time for voir dire is necessary for the intelligent and effective exercise of challenges. *Swain v. Alabama*, 380 U.S. 202, 218-219 (1965), overruled on other grounds, *Batson*

1

*v. Kentucky*, 476 U.S. 79 (1986), see also, *In Re Commitment of Hill*, 334 S.W.3d 226, 228 (Tex. 2011)(per curiam)("Litigants have the right to question potential jurors to discover biases and to properly use peremptory challenges.")[citation omitted].  However, there are two competing interests. The attorneys want to zealously represent their clients and find out everything, which could possibly be discovered. The Court is interested in conducting an efficient jury selection that does not unnecessarily invade the private lives of prospective jurors.

Balancing those competing interests, the American Bar Association has promulgated standards for Jury Selection. See, Pl. Exhibit 1, ABA Jury Project Standards, Principle 11, at pp. 67- 68. The ABA recommends in 11.B.2 that:

> **"1. Questioning of jurors should be conducted initially by the court, and should be sufficient, at a minimum to determine the jurors' legal qualification to serve in the case.**
> **2. Following initial questioning by the court, each party should have the opportunity, under the supervision of the court and subject to reasonable time limits, to question jurors directly, both individually and as a panel. In a civil case involving multiple parties, the court should permit each separately represented party to participate meaningfully in questioning prospective jurors, subject to reasonable time limits and avoidance of repetition.**
> **3. Voir dire should be sufficient to disclose grounds for challenges for cause and to facilitate intelligent exercise of peremptory challenges.**
> **4. Where there is reason to believe that jurors have been previously exposed to information about the case, or for other reasons are likely to have preconceptions concerning it, the parties should be given liberal opportunity to question jurors individually about the existence and extent of their knowledge and preconceptions.**
> **5. It is the responsibility of the court to prevent abuse of the juror selection examination process. ABA Jury Project Standards, Principle 11.B.1-5, p. 67"**

Limiting the amount of time or not permitting attorneys to question at all erodes the ability of counsel to intelligently exercise the right to challenge or strike. *Press-Enter. Co. v. Superior Court of California, Riverside County*, 464 U.S. 501, 522, n. 2 (1984)(J. Marshall, concurring op.) citing Babcock, Voir Dire: *Preserving "Its Wonderful Power"*, 27 *Stan.L.Rev*. 545 (1975),

(Exhibit 2 attached) limiting voir dire examination undercuts the ability of litigants to utilize, fully, the right to a jury trial, and works to the advantage of poor litigants who lack the resources to use other means to gather information about potential jurors.

The ABA concluded that "voir dire by the judge, augmented by attorney-conducted questioning, is significantly fairer to the parties and more likely to lead to the impaneling of an unbiased jury than is voir dire conducted by the judge alone. A simple perfunctory examination by a judge does not 'reveal preconceptions or unconscious bias.'" *ABA Jury Project Standards*, c. Principle 11.B, at p. 74 citing *Dingle v. State*, 759 A.2d 819, 828-29 (Md. 2000); see also, *Durbin v. Nourse*, 664 F.2d 1109, 1115 (9th Cir. 1981); *State v. Ball*, 685 P.2d 1055, 1058 (Utah 1984).

Plaintiffs do not seek unlimited time to conduct voir dire. Plaintiffs propose a limited amount of time for each party that permits sufficient questioning. Plaintiff can ask his voir dire questions to the entire panel of 40 at the same time to further save time. The goal is to discover information important to the intelligent exercise of their strikes and to make appropriate challenges for cause. Plaintiff does not intend to nor will they "argue" their case in voir dire. Plaintiff wants attorney-led voir dire of sufficient time to allow them to fully exercise his rights. Forty-five minutes per side is reasonable and does not dramatically increase the amount of time to try this case.

**III.    THOROUGH VOIR DIRE AVOIDS JUROR DISHONESTY**

A 1991 study made just that point. Researchers observed jury selection for 31 criminal trials, interviewed 190 jurors after the trials were over, and asked many of the same questions jurors had answered during voir dire. About one-fourth (1/4) indicated during the post-trial interviews that they or a family member had been a crime victim: information that they had not revealed in voir dire. Almost thirty percent (30%) told interviewers they knew someone in law

enforcement but had failed to reveal this in court. See, Richard Seltzer, Mark A. Venuti and Grace M. Lopes, "*Juror Honesty During the Voir Dire*", *Journal of Criminal Justice*, Vol. 19, pp. 451-462 (1991). (Exhibit 3 attached)

Jury dishonesty distorts the process and poses a real danger to both sides. The only solution is to provide sufficient time for the attorneys in the case to examine the prospective jury. Therefore, Plaintiffs request 45 minutes per side. The amount of time added to the trial of the case is insignificant when the benefits are considered. While 45 minutes does not guarantee jury honesty, it will provide both parties with a significant opportunity to evaluate the potential juries. Allowing this process will significantly contribute to an impartial jury and a fair trial for both Plaintiffs and each Defendant.

**IV.   ATTORNEY-LED VOIR DIRE IS MORE EFFECTIVE THAN JUDGE-LED VOIR DIRE**

Plaintiffs do not suggest that the Court is incapable of asking questions and obtaining important information. Instead, Plaintiffs respectfully request that the Court permit the lawyers to conduct the majority of the voir dire in this case. This request is supported by empirical studies showing that potential jurors are more candid with attorneys than with judges.

The study conducted by Seltzer, et al., reviewed short (under an hour) judge-led voir dire. Id. That study revealed significant juror dishonesty regarding matters important to the litigants. Id. For example, whether a juror was a victim of a crime or knew someone in law enforcement this information was not revealed in a criminal trial. Id.

Another study directly examined jury candor in 1987. See, Susan E. Jones, Judge-versus Attorney-Conducted Voir Dire, *An Empirical Investigation of Juror Candor*, LAW AND HUMAN BEHAVIOR, Vol. 11, No. 2, pp. 131-146 (1987). Pl. Exhibit 4A, 4B. The study found jurors less likely to be candid when asked questions by judges. This peer-reviewed study used a

straightforward methodology. One hundred and sixteen (116) eligible jurors filled out written questionnaires about their attitudes on the legal system, and then they were brought into the courtroom for voir dire sessions conducted by persons with legal backgrounds playing the roles of judge and attorneys. The mock jurors were asked the same questions they had answered earlier in the questionnaires. Researchers noted any differences in jurors' responses. The study found that potential jurors were nearly twice as likely to change their answers in the courtroom when questioned by a judge as when questioned by a lawyer. Women were somewhat more likely to change their answers than men. Even three ministers who participated in the sessions changed their answers significantly. Across the board, the mock jurors were more candid about their attitudes and beliefs when the lawyers conducted voir dire. Researchers concluded that the mock jurors tried to supply the answer they believed the judge wanted to hear -- the one they believed to be the most socially acceptable -- rather than their true belief. This was an attempt to confirm to a perceived judicial standard. Therefore, they shifted from moderate attitudes to more conservative ones.

The fundamental issue is the status of the federal court judge, not the judge's ability to ask questions. The bench, robe, and demeanor of the federal court are visible signs of authority and carry a higher social status than the lawyers in the case.

The respect jurors have for the position of judge -- and most show great deference to the court -- does not make potential jurors more forthcoming when talking to a judge. On the contrary, that respect creates a desire to please the judge and to avoid embarrassment by conforming to a perceived notion of what is socially acceptable. This type of modification of the response seriously curtails the ability of the litigants to obtain a fair and just verdict.

**V.    THE SIMPLE SOLUTION: PERMIT ADDITIONAL TIME FOR ATTORNEY VOIR DIRE**

Plaintiffs' request is a simple solution that will further the goal of a fair and impartial trial. For the investment of up to one and half hours (it is possible that not all the time will be used), all parties receive the fair and impartial trial that they are guaranteed by the Constitution. The amount of time requested does not materially add to the time spent trying the case. This motion does not seek to restrict the amount of time that the Judge spends examining potential witnesses in voir dire. Rather, it seeks permission to allow the attorneys to conduct the voir dire because the attorneys are in the best position to examine the possible bias and prejudice of the potential jurors given their extensive knowledge of the facts, which are to be considered by the jury.

## VI. ATTORNEY VOIR IS NECESSARY IN THIS PARTICULAR CASE

Petitioner's counsel has after requests have been made, has been granted attorney voir dire after judge voir dire. In the EDLA in the case of *Hebert vs. Arlene Rodriguez*, et al Civil Action 2:08-CV-05240-CJB-KWR Judge Carl Barbier allowed limited oral voir dire by attorneys for each side after he completed his voir dire. Glenn McGovern was counsel for plaintiff Hebert. Hebert had three felony convictions from 26 years before that were allowed into evidence. Also, there was media coverage of the arrest on TV, newspapers and online on the Internet. Voir dire was needed and allowed on these issues by Judge Barbier. Attorney voir dire was conducted of the entire panel of jurors to save time. Several prospective jurors were found unable to serve due solely to the attorney voir dire responses discovered during the voir dire. One two jurors stated they could not server as their business reputation would be damaged if they were on a jury that rendered punitive damages in a police case. One stated her husband's career would be damaged if she served and such an award was rendered so she could not serve. One juror cried as she plead, she could not be fair since her mother was murdered and she had to side with the police. None of this was uncovered in judge voir dire but was uncovered in plaintiff's counsel voir dire. All three were removed for

6

cause. Several others were excused due to bias for and against the police and admitted being prejudiced in attorney voir dire of both plaintiff and defense voir dire. Glenn McGovern was also granted oral voir dire by Judge Robert James in the Western District of Louisiana Federal Court in Monroe in the case of *Louisiana Cleaning Systems Inc et al v. Sheriff Andy Brown* Civil Docket No. 3:14-CV-02853. Several jurors that resided in Jackson Parish where the Sheriff was elected in were removed only after voir dire by plaintiff's counsel about they could not serve impartially due to their financial and social relationships with the sheriff-defendant that were not uncovered by the Judge's voir dire nor during defense voir dire.

      The perception of plaintiffs who brings tort suits has changed in New Orleans and in some parts of the country. Due to several high-profile cases such as the reported in the media, bias and prejudice is imbedded in many prospective jurors against plaintiffs who bring tort suits. Decades of tort reform promotion by corporate America, insurers and the Chamber of Commerce have also added to bias and prejudice in prospective jurors. A recent Go-Auto radio commercial refers to personal injury lawyers when the moderator asks in the commercial "What are you going to do when a blood-sucking lawyer calls you after a minor fender-bender accident?" A current Allstate commercial portrays its character, called Mayhem, rear ending a car to make up for his losses in the stock market and thus file a false insurance claim. Many articles discussing plaintiff lawyers who advertise on billboards have been recently published during the past legislative session during debates on banning lawyer advertising on billboards. It was publicized in the newspapers, TV and social media by LABI and certain State Representatives that such lawyer advertising drove out business from the State and made insurance rates rise.

      Thus, both sides really need attorney voir dire to empanel an unbiased jury. Due to the publicity and the nature of tort reform advertising being reported on in the media, jurors may be

biased as a result of the media exposure. Attorney voir dire is necessary and judge voir dire has been proven to not be adequate. This is not due to any lack of skill by the judge but due to the social position of the judge and the jury. In a landmark article *"Judge-versus attorney conducted voir dire" (Exhibit 4A, 4B),* potential jurors frequently distort their replies to questions posed during the voir dire. Subjects changed their answers twice as much when questioned by a judge as when interviewed by an attorney.

## VII.  CONCLUSION AND PRAYER

Plaintiff Jason Widmer, request permission for the attorneys for each side to have the opportunity to conduct 45 minutes of voir dire for each party. Studies addressing this question have revealed that attorney- conducted voir dire is critical to discovering the true outlooks of potential juries. Allowing attorney-conducted voir dire of a meaningful amount of time supports the right to trial by jury. Plaintiffs pray that this Court grant this motion and provide 45 minutes of voir dire to each side. Plaintiffs gets one day in court. It should be with a fair panel. With all the time spent on pre-trial and trial, an additional 45 minutes for each side to have attorney oral voir dire to ensure a fair trial free of juror bias is reasonable and the right thing to do.

Respectfully Submitted:

*/s/ Glenn C. McGovern*
Glenn C. McGovern (Bar #9321)
Callan J. Johns (La. Bar #38788)
Peyton M. Bowman (La. Bar #38679)
Attorney & Counselor at Law
2901 Division St., Suite 201
Metairie, Louisiana 70002
Mailing Address:
P.O. Box 516
Metairie, Louisiana 70004-0516
Telephone: (504) 456-3610

>Facsimile: (504) 456-3611
>Email: glenn@glennmcgovern.com
>***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I, hereby certify a copy of the foregoing Plaintiffs' Memorandum in Support of Motion for Counsel to be Entitled to Verbal Voir Dire for 45 Minutes Per Attorney has been forwarded to defendants, through counsel of record via electronic filing 5th day of August, 2021.

>*s/ Glenn C. McGovern*
>Glenn C. McGovern, Attorney for Plaintiff
>(La. Bar # 9321)